**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

A2C2 PARTNERSHIP LLC,

                Plaintiff,

v.                                    CIVIL ACTION NO.   2:13-cv-01449

CONSTELLATION SOFTWARE, INC.,

                Defendant.

**MEMORANDUM OPINION AND REMAND ORDER**

Pending are several motions including Plaintiff's motion to remand this case to the Circuit Court of Kanawha County, West Virginia [ECF 8].   For the reasons that follow the Court **GRANTS** the motion to remand.

### I.      FACTUAL BACKGROUND

Plaintiff A2C2 Partnership LLC, a West Virginia limited liability company, filed this breach of contract case in the Circuit Court of Kanawha County, West Virginia.   The Complaint fails to describe what kind of company Plaintiff is, but there are allegations that the assets of the Ann Arbor Country Club, in Ann Arbor Michigan, were transferred to Plaintiff in the course of insolvency proceedings.   All rights to the continued use of the country club's name and internet websites were transferred to Plaintiff.   Prior to the transfer, the country club had software and website-hosting and maintenance contracts with Defendant, a Canadian software and internet web-site company.

After Plaintiff took over the operations of the Ann Arbor Country Club, it decided to discontinue the software support from Defendant, but continued on with Defendant's web

services.   Plaintiff stopped making payments for the software support, but continued to make payments for the web-hosting services.   In retaliation, Defendant abruptly shut down the country club's web-site and demanded that Plaintiff agree to one year of software support services as a condition of restoration of the club's website.   The parties worked out an arrangement where the country club's web-site would be restored and where Plaintiff would not be required to pay for the software support services if Plaintiff paid Defendant $1,397.   Plaintiff paid the money and Defendant restored the website immediately.

Not long afterwards, however, Defendant again shut down the website, but this time posted a link that directed any visitors to a different web-site for a non-existent country club named "Mystic River Country Club."   Defendant allegedly refused Plaintiff's demands to release control of the Ann Arbor Country Club's web-site and refused to stop re-directing traffic to the fake country club site.   Apparently, Defendant was using the internet traffic from the Ann Arbor Country Club web-site to conduct some sort of general web-site testing.

Plaintiff filed its Complaint in the Circuit Court of Kanawha County, West Virginia on December 28, 2012.   The Complaint generally alleges breach of contract, fraud, and intentional interference with business relations claims, as well as a "loss of use" claim.   (ECF 1–1.)   The Complaint alleges that in addition to compensatory, annoyance, and inconvenience damages in an amount "not less than $50,000", Plaintiff is also entitled to recover "punitive damages in an amount to be determined by a jury."   (*Id.* at 12.)   Plaintiff also requests interest, costs, and attorneys' fees.   (*Id.*)

Defendant timely removed the case from state court on January 25, 2013, invoking this Court's diversity jurisdiction.   The Notice of Removal states, among other things, that Plaintiff's

Complaint alleges compensatory damages in excess of $50,000, seeks unspecified punitive damages, interest, costs, and attorneys' fees, and that "there is a preponderance of evidence that Plaintiff is pursuing damages readily in excess of the jurisdictional threshold of $75,000."   (ECF 1 at 2.)

## II.     LEGAL STANDARDS

Federal courts have original jurisdiction over all actions where the parties are citizens of different states and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1).   Subject to limited exceptions, a defendant may transfer a case from state court to federal court if the action is one "of which the district courts of the United States have original jurisdiction."   28 U.S.C.A. § 1441(a).

"Because removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction."   *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).   All doubts regarding the jurisdiction of this Court to hear a case will be resolved in favor of remand.   *Id.   See also Wickline v. Dutch Run–Mays Draft, LLC*, 606 F. Supp. 2d 633 (S.D. W. Va. 2009).   "The policy of the statute calls for its strict construction."   *Healy v. Ratta*, 292 U.S. 263, 270 (1934); *see also Able v. Upjohn Co.*, 829 F.2d 1330, 1332 (4th Cir. 1987) (stating that "congressional desire to restrict removal has been understood to require that doubts about the propriety of removal be resolved in favor of retained state court jurisdiction.").

The party asserting federal jurisdiction bears the burden of proof.   *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 935 (S.D. W. Va. 1996) (stating that when a defendant removes a case from state court in which the damages sought are unspecified, the defendant must prove by "a preponderance of the evidence that the value of the matter in controversy exceeds the

jurisdictional amount.")   Under this standard, the party must show that it is "more likely than not" that the amount in controversy satisfies the jurisdictional limit.   *Id.   See also Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996); *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992).   To satisfy this burden, a defendant must offer more than a bare allegation that the amount in controversy exceeds $75,000.   *Sayre v. Potts*, 32 F. Supp. 2d 881, 886 (S.D. W. Va. 1999).   An allegation without supporting facts will not satisfy the burden of establishing the amount in controversy.   *Id.* (citing *Gaus*, 980 F.2d at 567).   Rather, the defendant seeking removal must supply evidence to support his claim regarding the amount at issue in the case.   In so doing, he may rely upon the entirety of the facts and circumstances comprising the plaintiff's damages claim.   *Id.*

In evaluating a party's claim to federal jurisdiction, the court must base its decision on the record existing at the time the petition for removal was filed.   *St. Paul Mercury Indem. Co. v. Red Cab*, 303 U.S. 283, 291 (1938).   In particular, where the plaintiff's monetary demand is not specified in the complaint, "the amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal."   *Sayre*, 32 F. Supp. 2d at 886 (citing *Landmark Corp.*, 945 F. Supp. at 936–37); *see also Hutchens v. Progressive Poloverde Ins. Co*., 211 F. Supp . 2d 788, 791 (S.D. W. Va. 2002) (citation omitted).   Important factors include the type and extent of the plaintiff's injuries and the possible damages recoverable from those injuries. *McCoy v. Norfolk S. Ry. Co.*, 858 F. Supp. 2d 639, 649 (S.D. W. Va. 2012).   A court can also consider as a factor a plaintiff's settlement demands prior to removal.   *Id*. at 649–50.

In calculating the amount in controversy, the court may consider the entire record and make an independent evaluation of whether the amount in controversy is satisfied.   *Grubb v. Jos. A. Bank Clothiers, Inc.*, No. 2:05–cv–0056, 2005 WL 1378721 (S.D. W. Va. June 2, 2005) (citing *White v. J.C. Penny Life Ins. Co*., 861 F. Supp. 25, 27 (S.D. W. Va. 1994) (citation omitted)).   The amount in controversy, if not specified in the complaint, must be determined on the likely monetary relief that may be granted to the plaintiffs if they succeed on all of their claims asserted in good faith.   *See Landmark Corp*., 945 F. Supp. at 936–37; *Mullins v. Harry's Mobile Homes, Inc*., 861 F. Supp. 22, 24 (S.D. W. Va. 1994) (citing 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3725 at 423–24 (1985)).

## III.   DISCUSSION

The citizenship of the parties is not in dispute.   Plaintiff is a West Virginian citizen. Defendant is a Canadian corporation based in Toronto.   Thus, the sole issue presented is whether Defendant has proved by a preponderance of the evidence that the amount in controversy exceeds $75,000.

In its motion to remand Plaintiff faults Defendant for not offering any evidence in support of its argument that the amount-in-controversy exceeds the jurisdictional limit.   Plaintiff argues that remand is appropriate on this basis alone.   It further claims that the monetary amount alleged in the Complaint is $50,000 and that its "claim for punitive damages is entirely uncertain . . . entirely speculative."   (ECF 8 at 1–2.)

Defendant briefly responds that generally it is the good faith claims set forth in a complaint that determine whether the amount-in-controversy limit has been met.   Defendant concedes that it bears the burden of proving that Plaintiff's claims are in excess of $75,000.   It cites authority that

the allegations in a complaint are the starting point for ascertaining the amount in controversy. Defendant also cites authority that a good faith punitive damages claim may augment compensatory damages unless it can be said to a legal certainty that punitive damages cannot be recovered.

A. *Compensatory damages*

The Court has reviewed the record in this case. In its notice of removal (ECF 1), Defendant states that "the amount in controversy more likely than not exceeds Seventy-Five Thousand Dollars ($75,000) exclusive of interest and costs." (*Id.* at 1.) In support of this assertion, Defendant argues that Plaintiff's Complaint alleges that it seeks compensatory damages in excess of $50,000, unspecified punitive damages on its fraud and tort claims, interest, costs, and attorneys' fees. (*Id.* at 2.) Defendant then concludes that "[b]ased on the allegations contained in the Complaint at the time of Removal, there is a preponderance of evidence that Plaintiff is pursuing damages readily in excess of the jurisdictional threshold of $75,000." (*Id.*) In Defendant's one-and-a-half page response to the motion to remand, Defendant claims that the "core of this dispute is Plaintiff's claim that Plaintiff was fraudulently induced into paying past due amounts owed on Ann Arbor Country Club's account with Jonas Software." (ECF 9 at 2.) Defendant offers no evidence of the amount of any such past due amounts might be, no evidence of the value of the services at issue, or any other evidence or argument to support its contention that the amount in controversy is "readily in excess" of $75,000.

In its motion to remand, Plaintiff states that it "claims specified damages in the amount of $50,000." (ECF 8.) It is not lost on the Court that this is *not* what Plaintiff states in its Complaint. The Complaint states that compensatory damages are "in excess of $50,000." (ECF

6

1–1 at 12.)   Notwithstanding Plaintiff's posturing, Defendant fails to persuade the Court that the compensatory damages sought in what appears to be a run-of-the-mill breach of contract case are likely to amount to much more than $50,000, if that.

  B.  *Attorneys' fees and punitive damages*

"[A]ttorney fees are generally excluded in determining the amount in controversy, and may be included only where the fees are provided for by contract or where a statute mandates or allows the payment of such fees.  *Credit Acceptance Corp. v. Long*, No. 2:10-cv-00003, 2010 WL 3809837 at *7 (S.D. W. Va. 2010) (citin*g Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983) and *Patton v. Fifth Third Bank*, No. 2:05-cv-790, 2006 WL 771924, at *3 (S.D. W. Va. Mar. 24, 2006)).   Here, Plaintiff's claims are not based on a statute, but rather on common law theories of liability.   Defendant has not tendered any evidence that attorneys' fees are provided by any contract.   Thus, attorneys' fees are not considered in determining the amount in controversy.

Similarly, Defendant makes no effort to prove—or even argue—why piling on speculative punitive damages would spike the likely monetary award beyond the $75,000 mark.   Punitive damages may be included for the purpose of determining the amount in controversy. 14B Charles Alan Wright & Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3702.5 (4th ed. 2011).   However, claims for punitive damages proffered for the purpose of achieving the jurisdictional amount should be carefully examined.   *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1981).   The mere likelihood of punitive damages, without more, does not gives rise to federal jurisdiction.   *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. at 932, 938.

Under West Virginia law, punitive damages are generally unavailable for breach of contract claims.   *Goodwin v. Thomas*, 403 S.E. 2d 13, 16 (1991) ("[G]enerally, absent an

7

independent, intentional tort committed by the defendant, punitive damages are not available in an action for breach of contract.")   If, however, Plaintiff succeeded on one or more of its intentional tort claims, punitive damages are potentially available.   *See CSX Transp., Inc. v.* Smith, 729 S.E.2d 151, 171–72 (W. Va. 2012) (stating that in actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous) (citations omitted).   It is well-settled under West Virginia law that "punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred."   *Garnes v. Fleming Landfill, Inc.* 413 S.E.2d 897, 908–09 (W. Va. 1991).   The degree of harm caused by a defendant's actions has a proportionate relationship with the amount of punitive damages to be awarded.   *Id.*   A jury may consider the reprehensibility of a defendant's conduct and take into account: the financial position of the defendant; how long the defendant continued in his actions; whether he was aware his actions were causing or were likely to cause harm; whether he attempted to conceal or cover up his actions or the harm caused by them; whether and how often the defendant engaged in similar conduct in the past; and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.   *Id.*   If the defendant profited from his wrongful conduct, punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.   *Id.*

8

Defendant offers nothing to convince the Court that a punitive damage award is anything but speculative.   It offers no evidence or argument bearing on any of the *Garnes* factors.   The Court is left to speculate what liability flows from Plaintiff's claims or what an appropriate ratio of punitive to compensatory would likely be.   Removal of a case from state court may not be based on speculation.   *See Fahnestock v. Cunningham*, Civil Action No. 5:10-cv-00089, 2011 WL 1831596 at *2 (N.D. W. Va. May 12, 2011) (Stamp, J.).   Accordingly, Defendant fails to prove that it is more likely than not that the amount in controversy in this case satisfies the jurisdictional limit and this case must be remanded to the Circuit Court of Kanawha County, West Virginia.

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's motion to remand [ECF 8], **REMANDS** this case to the Circuit Court of Kanawha County, West Virginia, **DISMISSES** this case, and **DIRECTS** the Clerk to remove this case from the Court's Docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:   September 13, 2013

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE